Argued and submitted January 24, affirmed October 1, petition for review denied December 24, 2008 (345 Or 503)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DAVID HAROLD LARSON,
*Defendant-Appellant.*

Washington County Circuit Court
C032895CR; A128169

193 P3d 1042

George W. Kelly argued the cause and filed the brief for appellant.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Defendant was convicted of murder, ORS 163.115, and two counts of unlawful sexual penetration in the first degree, ORS 163.411, following a bench trial. On appeal, defendant challenges his sentence, contending that the indictment does not set out factual allegations to justify the imposition of consecutive sentences and that there was insufficient evidence to support the judgment against him for his defense costs. We affirm.

Defendant was indicted for and convicted of one count of murder and two counts of unlawful sexual penetration. The trial court sentenced defendant to 25 years of imprisonment without possibility of parole for the murder conviction and to sentences of 100 months' imprisonment for the two counts of unlawful sexual penetration, the latter sentences to run concurrently with each other but consecutively to the sentence for murder. ORS 137.123(2) permits consecutive sentences if a "defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct." The trial court found that the crimes were committed at separate and distinct times:

> "And what really happened is you did before—it was not the cause of her death and therefore it was not out of the same instance—but you did do the acts of unlawful sexual penetration in the first degree. That part of it did not take place when you were in some kind of drunken, completely unaware stupor, but, I recall—and it's even more appalling to me—that you actually came downstairs and bragged to Mr. Robin about the fact * * * of what you were doing to abuse her sexually and that those things occurred to her, which is the most degrading thing, aside from being killed, that can happen to a woman."

Following the announcement of the incarceration sentence, the trial court considered whether to impose costs on defendant under ORS 161.665. That statute provides, in part:

> "(1)   * * * [T]he court * * * may include in its sentence thereunder a provision that the convicted defendant pay as

costs expenses specially incurred by the state in prosecuting the defendant. Costs include a reasonable attorney fee for counsel appointed pursuant to ORS 135.045 or 135.050 and a reasonable amount for fees and expenses incurred pursuant to preauthorization under ORS 135.055. * * *

"* * * * *

"(4)   The court may not sentence a defendant to pay costs under this section unless the defendant is or may be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

The evidence at trial on defendant's ability to pay costs was that defendant had served in the military and then worked to construct sophisticated equipment for various companies before opening and running his own equipment manufacturing business. Defendant testified that he worked long enough at one of those companies to become "vested." Defendant retired from work, obtaining income from Social Security and rents from boarders at his house. Defendant had expanded his home into a "[v]ery large, very expansive [house with] [t]hree floors, numerous rooms," together with a machinery fabrication shop and a separate "two-story square building." The buildings contained a number of dwelling units that defendant rented to others.

During the sentencing hearing, the trial court discussed defendant's financial resources with the prosecutor and defense counsel. Directing its comments to defendant, the court observed:

"When I asked earlier whether you still owned your house, what I was really asking was do you have financial assets to pay this off. At the time you indicated that you had sold your house and I chewed on that a bit and was thinking, well, but if you qualified for a court-appointed lawyer, which you did and that is actually very common in serious cases like this because the costs are so great, then somewhere you had assets from selling the house and I do not know if those are still available, but that in some small way that we can begin to pay the costs to society. And I want to hear from both counsel about that. * * * [Defense counsel], what do you have? Do you have any information on that?

"[Defense counsel]: Judge, I would say that the Court should rely upon the court-appointed counsel request and the information that was submitted in that regard and that's what's part of the court file for the purposes of [defendant's] financial abilities."[1]

The court confirmed that, after his arrest, defendant transferred his house to his son for no consideration. The court stated, "[T]hen that will end that inquiry." The court then declared that it was reserving a decision on assessing defense costs, notwithstanding the transfer of the house, because defendant "had other financial means because he was in retirement. I don't know if it was Social Security or whatever." Defense counsel confirmed that defendant had Social Security income of $869 per month. The court directed defense counsel to provide information about the defense costs "and any other information you have about the financial status and then we'll just visit that issue when we get there." The court heard from persons present at the hearing that a conviction might end the payment of Social Security benefits and that defendant owned stock. Defense counsel noted, "All I can do, your Honor, is provide information concerning, certainly, my court-appointed attorney fees, 'cause I'll be aware of that." The court ended the sentencing hearing with the inquiry, "Anything else either counsel wants me to put on the record to make sure you've covered everything?"

After receiving the defense costs information, the court issued a letter opinion ordering defendant to pay specified amounts for regular and enhanced unitary assessments, crime victim fund repayment, court-appointed attorney fees, and defense costs and fees. The court specifically found:

"Notwithstanding Mr. Larson's incarceration, based on the length of time the Money Award will remain in effect, Mr. Larson's various pensions and/or sources of income, and his current or previous real estate holdings, the Court does find Mr. Larson has the ability to pay the above amount."

On appeal, defendant raises two assignments of error. Defendant first contends that the trial court erred in

---

[1] The trial court file does not include a copy of the application for court-appointed counsel.

ordering that his two concurrent sentences for unlawful sexual penetration sentence be served consecutively to his sentence for murder. Defendant claims that the facts showing that the crimes did not arise "from the same continuous and uninterrupted course of conduct" so as to justify consecutive sentences under ORS 137.132(2) were not pleaded in the indictment for those crimes, as required by *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). In *Apprendi*, the United States Supreme Court held that the Fifth and Sixth Amendments to the United States Constitution require that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 530 US at 476.

We rejected the argument that defendant makes here in *State v. Walch*, 218 Or App 86, 178 P3d 301, *rev allowed*, 344 Or 558 (2008). We held:

> "Defendant also argues that his sentence is unlawful because the indictment by which he was charged did not state the facts required to support imposition of consecutive sentences. *See Apprendi*, 530 US at 476 (holding that 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment'). In *State v. Sawatzky*, 339 Or 689, 698-99, 125 P3d 722 (2005), the Supreme Court held that the indictment need not include 'aggravating or enhancing factors necessary for the imposition of a sentence that exceeds the presumptive range' if the defendant has timely notice of the state's intention to seek enhancement, as well as 'the opportunity to exercise his or her jury trial right.' Here, defendant received a jury trial on the sentencing facts, and there is no contention that he did not receive timely notice of the state's intention. And, although the court in *Sawatzky* was concerned with 'aggravating or enhancing factors,' we see no reason, in light of [*State v.*] *Ice*[, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ____ US ____ , 128 S Ct 1657 (2008)], to draw any distinction between those factors and the facts supporting consecutive sentences."

218 Or App at 96.

The same result obtains here. Defendant did not seek a jury trial on the consecutive sentencing factors and

instead tried those issues to the court.[2] The court applied ORS 137.123(2) on the basis of the record created at trial and during the sentencing hearing. Defendant does not complain of insufficient notice before the sentencing hearing that consecutive sentences would be sought. Defendant did not present evidence on the application of ORS 137.123(2) during the sentencing hearing. Under *Walch*, the trial court did not err in imposing consecutive sentences.

■   In his second assignment of error, defendant asserts that there was insufficient evidence in the record to show that he had the ability to pay the defense costs under ORS 161.665(4). He argues that there was no evidence of his assets adduced during the sentencing hearing and that the trial court's finding on ability to pay was without evidentiary support. The state counters that defendant's objection was not preserved under ORAP 5.45(1) and that any unpreserved error was not plain and deserving of review.[3] The state further argues that, in any event, the record was sufficient to support the court's findings.

■   We agree that defendant's objection to the sufficiency of the evidence to support the court's finding concerning ability to pay was not preserved. "[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

The evidence at trial was that defendant owned valuable real property, had "vested" benefits from a former employer, and was receiving Social Security retirement benefits and rental income from his real property. Defendant never rebutted that evidence during the sentencing hearing,

___

[2] Defendant confirmed in oral argument that he did not seek a jury trial on the consecutive sentencing factors under *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ___ US ___ , 128 S Ct 1657 (2008).

[3] ORAP 5.45(1) provides, in part, that

"[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record."

except to note, in response to the trial court's question, that he had transferred his real property to his son without any consideration. Defendant never asserted at the October 26, 2004, sentencing hearing that he was without means to pay the costs, despite the court's initial inquiry to defense counsel to declare his position on that question ("[W]hat do you have? Do you have any information on that?") and later invitation to state "anything else * * * to put on the record to make sure you've covered everything." Defendant made no objection to the court's stated intent to award costs and did not file any argument with the court between the October hearing and the February 18, 2005, letter opinion. Defendant also never objected to the court's finding in its letter opinion before the entry of the amended judgment on March 28, 2005.

■       In *State v. Giger*, 115 Or App 559, 838 P2d 1114 (1992), the defendant did not object to a trial court's failure to consider ability to pay under ORS 161.665(3). We held that the defendant "may not raise the objection for the first time on appeal." 115 Or App at 563; *see also State v. Batty*, 109 Or App 62, 73, 819 P2d 732 (1991), *rev den*, 312 Or 588 (1992) (failure to contest evidence of disability income precludes argument on appeal regarding ability to pay under ORS 161.665(3)). Similarly, defendant's lack of opposition to the award of defense costs and his failure to object to the court's finding on ability to pay inhibits the advancement of his second assignment of error to this court.[4]

Affirmed.

---

[4] Defendant does not argue that the lack of sufficient evidence to support the ability to pay finding was plain error under ORAP 5.45. If there was error, it was not "apparent" and did not "appear on the face of the record," which are two of the requisites for plain error under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). Here, it could be inferred from the record that defendant did have sufficient assets to pay the awarded defense costs, given evidence of his rental income, stock holdings, and Social Security income. Thus, the lack of evidentiary support for a finding of ability to pay was not plain error.