Submitted June 19, 2013, affirmed May 13, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SIMON JAIMES-PINEDA,
*Defendant-Appellant.*

Yamhill County Circuit Court
MI100307DV; A148053

350 P3d 465

Peter Gartlan, Chief Defender, and Jonah Morningstar, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.*

DUNCAN, P. J.

---

* Haselton, C. J., *vice* Wollheim, S. J.

## DUNCAN, P. J.

In this criminal case, defendant appeals the trial court's judgment convicting him of two counts of assault in the fourth degree, ORS 163.160, and two counts of harassment, ORS 166.065. On appeal, defendant raises two assignments of error. In his first assignment of error, defendant asserts that the trial court erred by excluding evidence that he sought to introduce to rebut the state's evidence that he had threatened one of the state's witnesses. We reject that assignment because we conclude that the court excluded the evidence under OEC 403 and did not abuse its discretion in doing so. In his second assignment of error, defendant asserts that the court committed plain error by ordering him to pay court-appointed attorney fees. We reject that assignment because there is evidence in the record from which the trial court could find, as required by ORS 161.665, that defendant "is or may be able to pay" the fees. Accordingly, we affirm.

The state charged defendant with two counts of assault in the fourth degree and two counts of harassment. The charges arose from an altercation between defendant and his girlfriend, which was reported to the police by their neighbor, Bowers.

During the lunch break on the first day of trial, there was an incident, the nature of which the parties disputed. The prosecutor told the trial court that defendant had threatened Bowers, which upset Bowers's husband and triggered a verbal altercation between Bowers's husband, defendant, and two of defendant's friends. Defense counsel told the court that defendant had not threatened Bowers and that Bowers's husband had confronted defendant and his two friends without provocation. According to defense counsel, Bowers's husband had followed defendant and his two friends after they left the courthouse and "went berserk and really started yelling." The trial judge commented that he had seen defendant and his friends leave the courthouse and, shortly thereafter, had seen Bowers's husband "storming" up the sidewalk in their direction.

The prosecutor told the trial court that he wanted to ask Bowers about the threat that she said defendant had

made to her. The prosecutor's theory of admissibility was that the threat was relevant to show that defendant had "a guilty conscience." Defense counsel objected to the prosecutor's proposed questioning, asserting that defendant had not threatened Bowers and that Bowers's husband had instigated the incident.

The trial court ruled that the prosecutor could ask Bowers if she had been threatened, but could not ask about any details. In response, defense counsel told the trial court that she wanted to call defendant's two friends as witnesses to the incident. The trial court told defense counsel that it would not allow her to do so, stating:

"No. I am not interested in the facts of the interaction. All I am going to allow is has she been threatened. She can say yes or no. You can ask him [if he has] ever threatened her, and he can say no or yes, whatever the truth is. But I don't want to go into any details whatsoever.

"* * * I guess I am kind of * * * arguing, but let's just say this would have happened yesterday, none of us seeing it, would [the prosecutor] be able to ask [Bowers] that? Are you afraid to be here in spite of your, have you been threatened?

"Wouldn't that be relevant evidence to guilt? And [defendant] could say yes or no. Just because it happened an hour ago, I am not interested in the details. I don't want any details. That's controverted. I don't want witnesses on whether it happened or not. If somebody asked that and you can ask [defendant] the same, but I am not interested in any details, okay?"

During the prosecutor's direct examination of Bowers, the prosecutor asked Bowers if defendant had threatened her. Bowers answered, "Yes. Today out in the—." Defendant objected to any further testimony describing the incident, and, after the state made an offer of proof, the trial court sustained defendant's objection, stating that it did not want "a trial within a trial."

Similarly, when defense counsel questioned defendant, defense counsel asked defendant whether he had threatened Bowers and defendant replied, "No. Those are just false accusations * * * made today[,]" and the state

objected. Before the trial court could rule on the objection, defense counsel stated, "[t]hat's a sufficient answer," and did not elicit any additional testimony about the purported threat or Bowers's husband's actions.

At the conclusion of the trial, the jury found defendant guilty on all counts. The trial court sentenced defendant to three years of probation, subject to general and special conditions, including 60 days in jail. The court also ordered defendant to pay fees, assessments, and surcharges, including $1,300 in court-appointed attorney fees. This appeal followed.

In his first assignment of error, defendant asserts that the trial court "erred in refusing to allow defendant to introduce evidence supporting his account of the incident with Bowers * * * for the purpose of rebutting Bowers's version of the incident and thereby rebutting the inference that he was conscious of his own guilt." Defendant argues that the evidence was relevant and its exclusion was prejudicial. In response, the state asserts that (1) defendant failed to preserve his challenge to the exclusion of the evidence because he failed to make an offer of proof, (2) the trial court did not err by excluding the evidence, because it constituted impeachment on a collateral matter, and (3) even if the trial court erred, the error was harmless.

We first turn to the issue of preservation. The state faults defendant for failing to make an offer of proof. But, an offer of proof can be made through statements of counsel, provided that the statements adequately inform the trial court of the nature of the evidence at issue, *State v. Phillips*, 314 Or 460, 466, 840 P2d 666 (1992), and, in this case, defense counsel made such an offer. Defense counsel told the trial court about what had transpired between defendant, defendant's two friends, and Bowers's husband, and defense counsel also told the court that she wanted to call defendant's two friends as "witnesses to the interactions." Based on defense counsel's statements, the trial court was aware that defense counsel wanted to present evidence to support defendant's version of events, which was that he had not threatened Bowers and that Bowers's husband had confronted him and his friends without provocation.

Thus, defendant made a sufficient offer of proof. *See State v. Haugen*, 349 Or 174, 191-92, 243 P3d 31 (2010) (the defendant preserved his challenge to the trial court's exclusion of evidence regarding a comment made by a witness where the defense counsel described the remark to the court and said that he wanted the jury to be informed of it). From the record, it is apparent that the trial court understood what evidence defendant wanted to present, assessed the relevance of the evidence, and decided to limit the amount of evidence about the reported threat because it was "not interested in the facts of the interaction."

Having concluded that defendant preserved his challenge to the exclusion of the evidence, we turn to the merits of that challenge. Defendant argues that the excluded evidence was relevant and that neither the state nor the trial court articulated any lawful basis for its exclusion. We agree, as does the state, that the evidence was relevant. OEC 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The state introduced evidence that defendant had threatened Bowers to show that defendant had a guilty conscience. Evidence that defendant had not threatened Bowers was relevant to disprove that theory.

Contrary to the state's argument on appeal, defendant's proffered evidence did not constitute "impeachment on a 'collateral matter.'" *See State v. Burdge*, 295 Or 1, 6 n 3, 664 P2d 1076 (1983) (a witness may be impeached by evidence that contradicts the witness's testimony on any independently relevant fact, although the witness cannot be impeached as to merely collateral matters). The state used Bower's testimony about the reported threat as evidence that defendant had committed the charged crimes; its theory was that the threat was evidence that defendant had a guilty conscience and that defendant had a guilty conscience because he had committed the charged crimes. Thus, the state introduced Bowers's testimony that defendant had threatened her as substantive evidence of defendant's guilt. The evidence defendant sought to admit to rebut that

evidence did not constitute impeachment on a collateral matter; it was not offered only to discredit Bowers, but to disprove a fact upon which the state was relying to prove its case. *See State v. Gibson*, 338 Or 560, 573, 113 P3d 423 (2005) (quoting 1 Edward J. Imwinkelried *et al.*, *Courtroom Criminal Evidence* § 715, 273 (1998), for the proposition that a "fact is not 'collateral' if 'the fact is logically relevant to the historical, material facts in issue'"); *Burdge*, 295 Or at 6 n 3 (where a witness for the state had testified that he had called the defendant to arrange a drug transaction, evidence regarding whether the witness had actually called the defendant did not constitute impeachment on a "collateral matter"); *State v. Thompson*, 28 Or App 409, 413, 559 P2d 1294, *rev den*, 278 Or 393 (1977) (a collateral matter is "an issue not relevant to [the crime] charged").

But, we disagree with defendant's assertion that the trial court did not articulate a lawful basis for exclusion of the evidence. Each time the court addressed the admissibility of evidence regarding the lunch-hour incident, the trial court expressed its desire to avoid the introduction of details about the incident. As the court said when ruling on defendant's objection to Bowers's testimony, the court did not want a "trial within a trial." Thus, the court understood that evidence regarding whether or not defendant threatened Bowers was relevant, but it limited the evidence in order to avoid having the parties litigate what happened over the lunch hour. As we understand it, although the court did not cite OEC 403, it was exercising its discretion to exclude the evidence under that rule, which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

We review a trial court's decision to exclude evidence under OEC 403 for abuse of discretion. *State v. Moore*, 324 Or 396, 407, 927 P2d 1073 (1996). Here, we conclude that the trial court did not abuse its discretion. The trial court determined that evidence regarding whether defendant had threatened Bowers was relevant, and it admitted statements from both Bowers and defendant on the issue,

but, the court also recognized that allowing the parties to litigate what happened during the lunch-hour incident could result in "a trial within a trial." The court could reasonably conclude that allowing the parties to present details about the incident would cause confusion of the issues and undue delay, which would substantially outweigh the probative value of those details.[1] *See State v. Huffman*, 65 Or App 594, 603-04, 672 P2d 1351 (1983) (trial court did not abuse its discretion by admitting evidence that the defendant had threatened a witness for the state, because (1) evidence of the threat was relevant to whether the defendant was engaged in a conspiracy, which, in turn, was relevant to whether he committed the charged crimes, and (2) the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice); *State v. Fish*, 239 Or App 1, 9-10, 243 P3d 873 (2010) (it was within the trial court's discretion to exclude defendant's statement that he would harm the victim because (1) the statement had little probative value, given the other evidence of hostility between the parties and (2) the prejudicial effect of the evidence was significant). Therefore, we reject defendant's assertion that the trial court erred by limiting the evidence he could present with respect to the reported threat.

In his second assignment of error, defendant asserts that "[t]he trial court plainly erred in imposing $1,300 in attorney fees, where the record established that defendant, who was unemployed and indigent, was unable to pay the fees." In support of his assertion, defendant cites ORS 161.665, which provides that a court may not impose attorney fees "unless the defendant is or may be able to pay them."

Defendant did not object to the trial court's imposition of the fees and asks us to review the asserted error as "plain error." ORAP 5.45(1) (an appellate court may

---

[1] Defense counsel told the court that she wanted to call defendant's friends as "witnesses to the interactions." Defense counsel did not segregate their testimony about whether defendant had threatened Bowers from their testimony about other aspects of the interactions. Thus, we need not, and do not, decide whether, if defense counsel had sought to call defendant's friends only to have them testify that defendant had not threatened Bowers, the trial court could have excluded that evidence under OEC 403.

consider an "error apparent on the record"); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991) (describing "plain error" doctrine). Defendant contends that "there is no evidence in the record that defendant has the necessary resources available to pay the fees imposed[.]" The state disagrees, contending that "no plain error occurred because the record supports an inference that defendant had the ability to pay attorney costs." The state notes that, at trial defendant testified that he is "a farm equipment mechanic" and that he "usually find[s] jobs everywhere when [he] goes into farms." The state also notes that, at sentencing, defendant told the court that he was "on winter layoff" but "was expecting to be going back to work fairly soon in the very near future."

We agree with the state that the trial court did not commit plain error because there is sufficient evidence in the record to support the court's imposition of the attorney fees. Defendant was, by his own description, readily employable. Defendant's 60-day jail sentence would delay his return to work, but not for so long as to preclude the trial court from concluding that defendant may be able to pay the imposed attorney fees. *See State v. Larson*, 222 Or App 498, 505 n 4, 193 P3d 1042 (2008) (holding that the trial court did not plainly err in ordering attorney costs without making any ability-to-pay inquiry because "it could be inferred from the record that defendant did have sufficient assets to pay the awarded defense costs"); *see also State v. Eshaia*, 253 Or App 676, 680-81, 291 P3d 805 (2012) (the defendant's indication that he was receiving disability income was sufficient to support the imposition of $400 in court-appointed attorney fees).

Affirmed.