Submitted May 11, 2020; convictions on Counts 1, 2, 3, 4, and 5 reversed and remanded, remanded for resentencing, otherwise affirmed February 10, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONEVIN MICHAEL SMITH,
*Defendant-Appellant.*

Washington County Circuit Court
17CR57409; A168022

482 P3d 174

Defendant appeals from a judgment of conviction for multiple sex offenses that occurred when he was 15 years old. He contends that the trial court erred in denying his motion to dismiss two counts that were first filed in juvenile court but subsequently refiled in adult court. He argues that the statutory process by which he was automatically waived into adult court violated his procedural due process rights by stripping him of the privileges of juvenile court without hearing. Defendant also argues that the trial court erred in excluding certain expert testimony from his trial. Applying the then-controlling law in *State v. Black*, 289 Or App 256, 407 P3d 992 (2017), *rev'd*, 364 Or 579, 437 P3d 1121 (2019), the trial court had ruled that testimony that critiqued specific child forensic interviews at issue in the case was impermissible vouching. The state argues only that the issue was not preserved. *Held*: The trial court did not err in denying defendant's motion to dismiss, because defendant did not have a procedural due process right to a hearing in juvenile court. However, defendant adequately preserved his arguments regarding the excluded expert testimony, and the trial court erred by excluding that testimony. The error was harmless as to two counts, Counts 6 and 7.

Convictions on Counts 1, 2, 3, 4, and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

Ricardo J. Menchaca, Judge.

Ryan Scott filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Convictions on Counts 1, 2, 3, 4, and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.

**SHORR, J.**

Defendant appeals from a judgment of conviction for multiple sex offenses stemming from allegations that he sexually abused his younger sister and cousin when he himself was a minor of 15 years old. Defendant raises five assignments of error. In the first, he contends that the trial court erred in denying his motion to dismiss two counts that were first filed in juvenile court but subsequently refiled as Measure 11 offenses in adult criminal court pursuant to ORS 137.705(2) (2015) and ORS 137.707 (2015).[1] He argues that the statutory process by which he was automatically waived into adult court violated his procedural due process rights by stripping him of the privileges of juvenile court without the process of a hearing. For reasons we explain later, we reject defendant's first assignment and conclude that the trial court did not err in that regard.

In his second assignment, defendant argues that the trial court erred in excluding certain defense expert testimony from his jury trial. Applying the then-controlling law in *State v. Black*, 289 Or App 256, 407 P3d 992 (2017) (*Black I*), *rev'd*, 364 Or 579, 437 P3d 1121 (2019) (*Black II*), the trial court ruled that it was permissible for the expert to speak generally about best practices for child forensic interviews, but that certain testimony that appeared to apply those best practices to critique the specific child interviewing at issue in the case was tantamount to vouching and was impermissible. *Black I* was subsequently reversed by the Supreme Court, and we now understand the type of testimony at issue to be admissible. *Black II*, 364 Or at 579. The state argues only that the issue was not preserved. We conclude that the issue was preserved and agree that, under the more recently announced rule in *Black II*, the trial court erred by excluding the relevant testimony. However, we conclude that the error was harmless as to Counts 6 and 7, and, thus, we reverse the convictions for Counts 1 through 5 only. As a result, we do not need to reach defendant's third and

---

[1] Throughout the remainder of this opinion, all references to ORS 137.705 and ORS 137.707 are to the 2015 version, which was in effect at the time of the events at issue in this case. The statute has since been amended to, among other things, eliminate the mandatory adult prosecution of 15-, 16-, and 17-year-old minors for certain serious felonies. *See* Or Laws 2019, ch 634, §§ 4-5.

fourth assignments, which pertain to now moot alleged sentencing errors affecting those reversed counts. Finally, we reject defendant's fifth assignment of error without further written discussion.

## I.   FIRST ASSIGNMENT OF ERROR— WAIVER INTO ADULT COURT

A.  *Facts*

The facts pertinent to defendant's first assignment of error are mainly procedural and undisputed. The Washington County Juvenile Department initially filed a petition against defendant, then 15 years old, alleging a single count of attempted sexual abuse in the first degree against SS, his 10-year-old cousin. The juvenile court held a preliminary hearing, and defendant was conditionally released to his father. Further proceedings occurred in the juvenile case for the next several months. Defendant was later indicted on eight separate counts in Washington County Circuit Court. Counts 6, 7, and 8 pertained to the same victim, SS, and the same incident as the conduct at issue in the juvenile petition. However, instead of attempted sexual abuse in the first degree, the crime committed against SS alleged in the juvenile petition, the new criminal indictment alleged two counts of sexual abuse in the first degree and one count of unlawful sexual penetration in the first degree. Unlike the previous crime charged in juvenile court, the new offenses constituted Measure 11 crimes when committed by an individual of at least 15 years of age. *See* ORS 137.707(1)(a), (4)(a) (conferring adult liability for certain listed crimes). Then-existing law required the prosecution of 15-, 16-, and 17-year-old minors in adult criminal court when certain serious felonies were alleged, and expressly forbid a district attorney from pursuing such a case in juvenile court. *See* ORS 137.707(1)‑(4). Defendant filed both a demurrer from the indictment and a motion to dismiss the indictment in the trial court.

In his accompanying memorandum in support of the demurrer and motion to dismiss, defendant acknowledged that ORS 137.707 authorized his prosecution in adult

criminal court for Measure 11 offenses, including sexual abuse in the first degree and unlawful sexual penetration in the first degree. Defendant also acknowledged that ORS 137.707(1)(b) prohibited the prosecutor from filing a juvenile court petition when Measure 11 offenses were alleged and the defendant was at least 15. Nevertheless, defendant argued that the statute was silent on "what happens when the Juvenile Court already has jurisdiction pertaining to a single criminal episode that has presumably occurred, and the State now believes that episode included Measure 11 level conduct." Citing ORS 419C.005(1) (2015),[2] defendant argued that, once juvenile court jurisdiction attached, the juvenile court "has exclusive jurisdiction until that child is transferred from the court's jurisdiction." Defendant argued that "[i]nitiating a prosecution in adult court for the same criminal episode of the child that is currently subject to Juvenile Court jurisdiction without going through the proper waiver basis is an act outside the law." The state did not file a written response to those arguments, but moved to dismiss defendant's juvenile case the following day. Defendant made similar arguments in the juvenile court opposing that motion and, after a hearing, the juvenile court granted the state's motion to dismiss the juvenile petition. Finally, several weeks later, the trial court denied defendant's motion to dismiss the adult indictment and did so without a hearing. Defendant reiterated his jurisdictional arguments at trial after the state had rested its case, and those arguments were again denied. On appeal, defendant assigns error to the trial court's denial of his motion to dismiss with respect to Counts 6 and 7.[3]

B.  *Analysis*

We review the question of whether the trial court was required to send the case to juvenile court for a hearing

---

[2] As with a number of other statutes referenced in this opinion, ORS 419C.005 was also amended in 2019. Or Laws 2019, ch 634, § 14. All references to ORS 419C.005 in this opinion are to the 2015 version, which was in effect at the time of defendant's crimes.

[3] Although defendant's jurisdictional arguments in the trial court pertained to Counts 6, 7, and 8, he was acquitted of Count 8 following a jury trial. Thus, he only appeals the court's ruling on Counts 6 and 7, those counts for which he was convicted.

for legal error. *State v. Gaige*, 304 Or App 471, 472, 468 P3d 532, *rev den*, 367 Or 115 (2020). Defendant argues that, once juvenile jurisdiction attached for the charges involving SS, he possessed a vested interest in the rights and protections of juvenile court. Defendant contends that the Fourteenth Amendment to the United States Constitution granted him the procedural due process right to a hearing before those privileges could be extinguished and the case moved to adult criminal court. Because he was not afforded a hearing, he argues, Counts 6 and 7 should have been dismissed. In response, the state argues that defendant did not have a constitutional right to a hearing, because ORS 137.705 and ORS 137.707 mandated defendant's prosecution in adult court and afforded the juvenile court no discretion over whether to waive jurisdiction.

We considered a similar question just last year in *Gaige*, 304 Or App at 472. There, the defendant, who was 16 at the time, was charged in adult criminal court with several Measure 11 and non-Measure 11 offenses. *Id*. The defendant moved to dismiss the indictment, arguing that, even though the charges had been first brought in adult court and there was no existing juvenile case, the juvenile court had jurisdiction under ORS 419C.094, because he had been taken into custody before the charges were filed.[4] *Id*. He similarly argued that, because he was under juvenile court jurisdiction, he was entitled to a juvenile court hearing under the Due Process Clause of the Fourteenth Amendment to determine whether he should be remanded to adult court. *Id*. at 472-73. As in the instant case, the defendant directed us to *Kent v. United States*, 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966), and *In re Gault*, 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967), as authority for that contention. *Gaige*, 304 Or App at 473.

In *Gaige*, we concluded that, even if juvenile court jurisdiction had been invoked, the filing of an indictment in adult criminal court alleging Measure 11 offenses "divested

---

[4] ORS 419C.094 states that, "[e]xcept as otherwise provided in ORS 419C.103(3) and (4), the jurisdiction of the juvenile court of the county in which a youth is taken into custody under ORS 419C.080 and 419C.088 shall attach from the time the youth is taken into custody."

the juvenile court of jurisdiction by operation of law." *Id*. at 474. This was because, under ORS 137.705(2)(c), "'[t]he filing of an accusatory instrument in a criminal court under ORS 137.707 divests the juvenile court of jurisdiction in the matter if juvenile court jurisdiction is based on the conduct alleged in the accusatory instrument or any conduct arising out of the same act or transaction.'" *Gaige*, 304 Or App at 474 (quoting ORS 137.705(2)(c)). Further, we concluded that *Kent* and *Gault* did not stand for the proposition that the defendant asserted. *Gaige*, 304 Or App at 474. We followed the Ninth Circuit's interpretation of those cases, as articulated in *Alvarado v. Hill*, 252 F3d 1066, 1069 (9th Cir 2001). *Gaige*, 304 Or App at 474-75. We summarized *Alvarado*'s holding: "[D]ue process requires the sort of hearing for which a defendant argues only when a state's statutory scheme grants a juvenile court *discretion* to determine whether a youth should be remanded to adult court or, instead, remain in juvenile court." *Id*. at 474 (emphasis in original). Because ORS 137.707 left the juvenile court with no discretionary power in this regard, "due process did not require defendant be granted a hearing at which the court could exercise that nonexistent authority." *Id*. at 475.

Here, defendant argues that *Gaige* should not control because of the estoppel rule that, "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Zedner v. United States*, 547 US 489, 504, 126 S Ct 1976, 164 L Ed 2d 749 (2006) (internal quotation marks omitted). That argument is not entirely clear to us, but we reject it based on our understanding of it. The record supports the conclusion that the state did not assume a contrary position, but rather opted to proceed in adult court following additional allegations by SS that alleged that defendant had committed Measure 11 crimes. Defendant's efforts to distinguish *Gaige* are not convincing. We conclude that *Gaige* controls and that the trial court did not err in denying defendant's motion to dismiss Counts 6 and 7.

## II.   SECOND ASSIGNMENT OF ERROR—
## EXCLUSION OF EXPERT TESTIMONY

A.   *Facts*

      In defendant's second assignment of error, he asserts that the trial court erred by excluding certain expert testimony pursuant to the rule against vouching. For purposes of appeal, the relevant facts are not disputed. The charges in this case stemmed from multiple allegations of abuse involving two victims, SDS and SS. The first allegations were made in June 2016 by SS, defendant's cousin who was nine years old at the time. SS reported that defendant had touched her inappropriately in a single incident approximately two weeks before. Soon after SS's disclosure, she was assessed at CARES Northwest, a pediatric clinic that evaluates children for evidence of abuse. That evaluation included both a forensic interview and a physical medical evaluation. About a year later in June 2017, SDS, defendant's sister, came forward with her own allegations of abuse, which were more extensive and involved repeated incidents over several years. SDS was also evaluated by CARES Northwest due to her allegations. SDS reported that the abuse had started when she was possibly as young as eight and had stopped months prior to her report.[5] SDS testified that she did not remember the first time or last time defendant had abused her. Later in 2017, SS made additional allegations, claiming that more extensive abuse had occurred during the incident in May 2016. SS took part in a second CARES interview in August 2017, approximately 14 months after her initial interview.

      At trial, defendant admitted that he had asked to see SS's underwear but testified that he had never touched her inappropriately. He further denied that any abuse had ever occurred with SDS. The defense made several different arguments for acquittal. As to the charges involving SDS, the defense focused on defendant's troubled relationship with his and SDS's mother and presented the theory that

---

[5] Defendant was under 15, and therefore not subject to adult criminal prosecution, for approximately the first half of the time period during which SDS alleged the abuse had occurred. Defendant was never charged as a juvenile for any crimes he may have committed against SDS before his fifteenth birthday.

the mother had encouraged SDS to make false allegations. The defense argued in the alternative that, even if any of the alleged abuse had occurred, there was not sufficient evidence to prove beyond a reasonable doubt that it happened after defendant turned 15. As to SS, the defense highlighted the various different accounts of the incident that SS had given over time, and again posited that there was insufficient evidence that the incident had occurred after defendant turned 15. The defense also criticized CARES Northwest's overall investigation. In particular, the defense described CARES as a law enforcement partner that failed to investigate alternative explanations for the reports or question inconsistencies in the allegations, ultimately collecting unreliable evidence. Throughout the nine-day trial, the defense focused on CARES's role in the investigation and evaluation of both victims.

On the eighth day of trial, the defense sought to introduce the testimony of Dr. Johnson, a child psychologist experienced in assessing children for sexual abuse. The state requested an OEC 104 hearing outside the presence of the jury for the court to decide on the admissibility of Johnson's testimony. To "try and save time," the defense offered to question Johnson regarding his qualifications and "share with the court an overview of what [he] would ask of the witness" via an offer of proof. Both the state and court agreed to that proposal. After establishing Johnson's qualifications, defense counsel gave an overview of the topics he intended to cover on direct examination, which mainly covered general concepts and best practices for child forensic interviews. Defense counsel's offer included the following:

> "The fact that Washington County actually has protocols and those protocols are published by the Washington County District Attorney's Office and they are protocols that are distributed to the other members of the MDT who I've just noted, and they cite the importance of doing things like not engaging in duplicating interviews, protecting children from too many multiple interviews and they cite the importance of, in general, following the best practices of guidelines.

> "Dr. Johnson can testify, if allowed, that he has reviewed at least a hundred and maybe hundreds of CARES

assessments over the thirty plus years that CARES has been around. And that contemporaneously since the existence of guidelines, that they tend not to follow them in terms of not engaging in differential analysis or asking questions that explore alternative hypotheses.

"* * * * *

"General principles that apply to delayed disclosure. The importance of contextual details and the importance of consistency, in general, or inconsistency, in general, and the differences between a scenario which there was a one-time episode versus multiple time episodes. In general, do children in the nine to 11 year old age range demonstrate inability to recall consistent details about major events about sexual abuse. Although if there are multiple instances of sex abuse, they may not remember the specific details of much regarding each specific incident.

"The fact that when there are multiple incidences that the better question is to ask: Do you remember the first time it happened, do you remember the last time it happened, and to avoid age-dating confusion when asking questions of children compromising the value of that question. For example, would be to ask do you remember how old you were the first time it occurred, do you remember how old you were the last time it occurred, because children get confused by age, date, chronology, but their events for something that occurred are more likely to be able to focus in terms of memory recall on a first time and a last time.

"And that generally children of average ability and memory in the nine to 12 age range are able to recall the first time an event occurred or the last time an event occurred * * *."

In response to defense counsel's offer of proof, the state argued, among other things, that some of the proposed testimony would constitute impermissible vouching:

"My concerns on—on—with this particular witness, judge, there's—and I'm looking at this outline [defense counsel] sent me, which I appreciate it. There's a section here that says protocols ignored, guidelines ignored. Again, I don't—maybe I might—I might have missed that when [defense counsel] was just reviewing what he plans on * * * asking Dr. Johnson, but under [*Black I*, 289 Or App at 264],

which involved, I believe, Dr. Johnson and [defense counsel], they're not allowed to comment on whether there was any protocols ignored in this case or guidelines ignored in this case, which it sounds like—well, my reading of that is that's what he's here to do *** in part.

"That also includes questions about wouldn't it have been better to ask rather than eight—how old you were, when was the first time, when was the last time, do you remember the first time or last time."

In response, defense counsel acknowledged *Black I*, but argued that the proposed testimony would not constitute vouching because it would not directly comment on the truthfulness of the children and would be helpful to the jury.

Guided by *Black I*, the trial court ruled that it would allow the expert to testify as to "general principles" important to child forensic interviews, but would prohibit three specific areas of testimony as impermissible vouching:

"[W]hat I will not allow and immediately shut down is I'm not going to allow questions regarding better questions to ask. I think that's the way to frame it. I will not allow any testimony regarding are there better questions to ask.

"And going on to that, I will not allow questions *** about the last time or the first time abuse occurred. I won't allow that line of questioning. And then the third line of questioning I won't allow is the protocols or guidelines in this case being ignored. I think that's a credibility and direct comment on the evidence which, as I read *Black* [*I*], is specifically prohibited and that was affirmed in this county as a matter of fact."

After the ruling was announced, defense counsel clarified, "My intent was not to ask about does he have an opinion in this case whether the protocols or guidelines were followed, but, in his general experience, are the protocols and guidelines followed." Johnson then testified before the jury in accordance with the court's ruling. Finally, during closing argument, defense counsel articulated some of the arguments that Johnson had been prohibited from discussing:

"[I]n a case where there are multiple reports of sex abuse over a lengthy period of time and you have a fairly intelligent mid-range child, certainly [SDS] seems to be pretty

intelligent, it's important not to ask the questions that CARES asked, which mixed and matched how old were you the first time it happened, how old were you the last time it happened. Because even kids around ten get confused about age and time sequence. You got lots of testimony about that.

"The better way to ask the question is: Do you remember the first time it happened? Do you remember the last time? And you folks remember that [SDS] doesn't in either case. Now, if her brother had done this to her, as smart as [SDS] is, do you think that it's likely that she would have a memory of the very first time she was violated by somebody she loves and trusts? And I'm not saying, oh, yeah, it was February 22nd of three and a half years ago. I'm talking about does she have any memory of the event enough to talk about it and she does not."

The jury convicted defendant of six of the charged counts and one lesser included count and acquitted him on Count 8.

B.   *Analysis: Preservation*

On appeal, defendant argues in his opening brief that he offered the exact same type of evidence that was at issue in *Black I* and *II*: expert testimony about the specific ways in which the interviews in the case failed to conform to established guidelines and protocols. However, defendant does not specify what part of counsel's offer of proof should be read as a specific critique of the SDS and SS interviews. The state responds that defendant never actually offered into evidence the type of specific critique that was at issue in *Black I* and *II*. The state posits that, to satisfactorily preserve this issue, defendant would have had to clearly offer "testimony from Dr. Johnson that he had reviewed the interviews of the victims in this case and wanted to state an opinion that those interviews were not substantially in compliance with 'established interviewing protocols.'" Because defense counsel never made such an offer, and "expressly acknowledged that this court's decision in [*Black I*] controlled," the state argues that this issue was not preserved.

Defendant responds to the state's preservation argument in a reply brief, and narrows his preservation argument to focus on one section of the overall offer of

proof—specifically, the section addressing "better questions to ask" during child forensic interviews when multiple incidents of abuse are alleged.[6] Defendant argues that this line of inquiry was a specific critique of the forensic interviewing in this case, and that the "better questions to ask" framing meant "better than the questions that were asked *in this investigation*." (Emphasis in original.) We now understand defendant's arguments on appeal to relate to the trial court's exclusion of the "better questions to ask" testimony only, and for that reason we do not consider whether any other section of defendant's offer of proof was erroneously excluded under *Black II*.

Our basic preservation inquiry is whether the trial court had the opportunity to consider and correct the error now claimed on appeal. *State v. Vanornum*, 354 Or 614, 632, 317 P3d 889 (2013). When an appellant claims that the trial court excluded evidence in error, generally the appellant must show that he made an offer of proof of the excluded evidence. *State v. Hernandez*, 269 Or App 327, 330, 344 P3d 538 (2015). An offer of proof may take the form of statements of counsel, "provided that the statements adequately inform the trial court of the nature of the evidence at issue." *State v. Jaimes-Pineda,* 271 Or App 75, 78, 350 P3d 465 (2015). "That does not necessarily mean that the party's counsel must identify specific testimony that he wishes to elicit, but it does require that the party present sufficient evidence, even if broadly stated, to put the trial court on notice of its substance and nature." *State v. Perez-Garcia*, 295 Or App 156, 160, 433 P3d 443 (2018). At bottom, the main issue is whether the offer of proof has sufficiently served the

---

[6] To review, this section of the offer of proof stated:

"The fact that when there are multiple incidences that the better question is to ask: Do you remember the first time it happened, do you remember the last time it happened, and to avoid age-dating confusion when asking questions of children compromising the value of that question. For example, would be to ask do you remember how old you were the first time it occurred, do you remember how old you were the last time it occurred, because children get confused by age, date, chronology, but their events for something that occurred are more likely to be able to focus in terms of memory recall on a first time and a last time.

"And that generally children of average ability and memory in the nine to 12 age range are able to recall the first time an event occurred or the last time an event occurred * * *."

purposes of the preservation rule: "to allow the trial court to consider a contention and correct or avoid any error, to allow the opposing party an opportunity to respond to a contention, and to foster full development of the record." *State v. Lulay*, 290 Or App 282, 289, 414 P3d 903, *rev den*, 363 Or 283 (2018) (citing *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008)). "What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court." *Peeples*, 345 Or at 220.

Here, the state argues that defendant's trial counsel conceded that *Black I* controlled and chose to not offer any testimony that *Black I* would have prohibited— specifically, an expert's opinion that the child forensic interviews in this case failed to conform to established protocols and guidelines. However, the record does not support that argument. As we have said before, an offer of proof must have "sufficient particularity *to allow the trial court to rule* on the argument and correct any error." *State v. Reeves*, 250 Or App 294, 301, 280 P3d 994, *rev den*, 352 Or 565 (2012) (emphasis added). Another way of articulating our task is that we must first discern whether defense counsel made sufficiently clear to the trial court and opposing counsel that he was seeking to admit a particular critique of one or more CARES interviews in this case. Second, we must determine whether the trial court and opposing counsel had an adequate opportunity to consider and respond to that specific offer. We conclude that the answer to both questions is yes in this case.

Although on appeal defendant initially characterized the relevant portion of the offer of proof as Johnson's opinion "whether the child interviews of SDS and SS were conducted consistently with guidelines, protocols and best practices for child forensic interviews," we understand, based on reply briefing, that he refers specifically—and only—to the "better questions to ask" line of inquiry, which addressed appropriate interview questions to ask when multiple instances of abuse are suspected over a lengthy period. With that said, we conclude that the discussion that occurred on the record shows that defendant's offer regarding "better

questions to ask" was understood by all present as an offer to critique a specific forensic interview in this case.

Further, this offer was both sufficiently clear for the trial court and the state to understand and provided the court and the state with an adequate opportunity to consider and respond to it. We acknowledge that defense counsel did not go into great detail and left some question as to what exactly Johnson would say if permitted to testify, but the offer was not so vague as to be misunderstood. The phrase "better questions" implies a comparison to *something*, and here the overall context makes clear that the intended comparison was to the CARES interview questions that were posed to the child in this case who claimed multiple incidents of abuse over a lengthy period. It is thus not surprising that the state heard this offer as a specific critique of that CARES interview and responded by citing *Black I*:

> "[U]nder [*Black I*] they're not allowed to comment on whether there was any protocols ignored in this case or guidelines ignored in this case * * *.
>
> "That also includes questions about wouldn't it have been better to ask rather than eight—how old you were, when was the first time, when was the last time, do you remember the first time or last time."

Finally, the trial court framed its ruling with the same language and categorization as was used in *Black I*, illustrating that it also saw "better questions to ask" as a critique of a specific interview in this case: "I will allow Dr. Johnson to testify as to *general principles*, but what I will not allow and immediately shut down is I'm not going to allow questions regarding better questions to ask." (Emphasis added.) The record illustrates that defendant's offer regarding "better questions to ask" was reasonably interpreted by all involved as a critique of a specific CARES interview in this case and allowed the state and trial court to fully consider and respond to the offer.

In light of that discussion on the record, we also reject the state's arguments that are based on defense counsel's comments made *after* the court's ruling, where defense counsel said: "My intent was not to ask about does he have an opinion in this case whether the protocols or guidelines

were followed, but, in his general experience, are the pro-
tocols and guidelines followed." We do not believe counsel's
post-ruling clarification limits the value of his earlier offer
of proof regarding the "better questions to ask" testimony.
Further, the state's argument that defense counsel's offer
of proof failed to present a clear critique of a specific inter-
view in this case is further weakened by the specificity of
that section of defense counsel's offer, which went into not
only the different questions but also the expert's opinion
as to their significance and potential to cause "age-dating
confusion."

Our preservation inquiry is whether defense coun-
sel clearly presented, such that the trial court and opposing
counsel could consider it, the type of testimony now at issue
in this appeal. We conclude that defendant's offer of "better
questions to ask" a suspected child sex abuse victim during
a forensic interview when multiple instances of abuse are
alleged over a lengthy period was interpreted by the state
and trial court as a specific criticism of a particular CARES
interview in this case, such that defendant preserved the
issue now raised on appeal.

C.   *Analysis: Merits*

We now turn to the merits. Whether evidence con-
stitutes vouching is a legal question that we review for
legal error. *State v. Criswell*, 282 Or App 146, 156, 386 P3d
58 (2016). It is well established that "one witness may not
comment on the credibility of another witness." *State v.
Chandler*, 360 Or 323, 330, 380 P3d 932 (2016). However,
"[e]xpert testimony that provides jurors with useful informa-
tion in making their own credibility assessment ordinarily
is admissible, as long as it is not either a direct comment on
the credibility of a witness or tantamount to a direct com-
ment on the credibility of a witness." *State v. Beauvais*, 357
Or 524, 545, 354 P3d 680 (2015). Admittedly, it is often diffi-
cult to distinguish between a "statement that is tantamount
to a direct comment on the credibility of a witness" and a
"statement that is relevant for a different reason but that
tends to show that a witness is telling the truth." *Id*.

In *Black*, the defendant was charged with sexu-
ally abusing several minors, and sought to introduce expert

testimony addressing whether the interviews of two of the alleged victims, GP and JN, were consistent with established protocols for child forensic interviews. *Black II*, 364 Or at 581. Specifically, the defendant offered testimony on the following topics:

> "[The] absence of exploration of alternative theories or secondary gain in the interview of [GP] relative to [JN].
>
> "The fact that the methodology used by Detective Massey [in his interview of JN] involved not only leading questions, but suggestive questions, and to some degree, what an emotionally coercive question is."

*Id*. at 582 (footnote omitted). After reviewing Oregon law defining impermissible vouching, the Supreme Court articulated and summarized the rule on vouching:

> "In sum, when a party objects to testimony as improper vouching, a court must determine whether the testimony provides an opinion on truthfulness or, instead, provides a tool that the factfinder could use in assessing credibility. That determination does not necessarily require an assessment of whether that specific tool is permitted under the rules of evidence. For example, a court need not consider, as part of a vouching inquiry, whether expert testimony is sufficiently beyond the experience of a lay juror to meet the test of admissibility under OEC 702 and OEC 403. If a court determines that testimony constitutes vouching because it provides an opinion about the truthfulness of another witness and not information that could be helpful to jurors in forming their own opinions about that subject, the court must prohibit the testimony. If the testimony does not provide such an opinion, the court must then consider any other objections to the testimony that are raised by the parties."

*Id*. at 593. Having articulated that rule, the Supreme Court concluded that the proposed testimony would not have constituted vouching, because it would have aided the jury in assessing the witnesses' credibility without stating a direct opinion on the witnesses' credibility. *Id*. at 593-94.

Here, we conclude similarly that the trial court erred by excluding the "better questions to ask" testimony, because it did not constitute vouching. That error was due

solely to the court's reliance on our then-binding opinion in *Black I*, which the Supreme Court later reversed in *Black II*. The excluded testimony at issue in *Black* was extremely similar to the excluded testimony here, both in content and purpose. Both lines of inquiry sought to critique specific interviews by dissecting the specific questions asked during those interviews and comparing them to established best practices, guidelines, and protocols for child forensic interviews. Both lines of inquiry would have assisted the jury in evaluating the reliability of the answers obtained in those interviews, without directly stating the expert's opinion on whether the child witnesses were telling the truth. In light of these similarities, and the fact that the state makes no arguments on the merits, we readily conclude that *Black II* controls and that the trial court erred by excluding the offered testimony regarding better questions to ask a child who alleges she was subject to multiple incidents of sexual abuse over a lengthy period.

D.   *Analysis: Harmless Error*

Having concluded that the trial court erred, we finally address the issue of harmless error. Defendant argues that the trial court's error was not harmless as to any of his seven convictions. He claims that the testimony would have helped "the jury assess the credibility and reliability of the answers of both SS and SDS" and determine whether "SDS's memories in particular were insufficient to satisfy the state's burden that Defendant was over 15." The state does not address harmless error.

We will affirm a judgment of conviction despite the erroneous exclusion of evidence if the error was harmless, meaning that there is little likelihood that the error affected the verdict. *State v. Johnson*, 225 Or App 545, 550, 202 P3d 225 (2009). In determining harmlessness, we do "not ask whether the evidence of guilt is substantial or compelling." *State v. Henley*, 363 Or 284, 307, 422 P3d 217 (2018). Instead, we assess "the erroneously admitted or excluded evidence in light of other evidence in the record pertaining to that issue." *Johnson*, 225 Or App at 550. An error that relates to a central factual issue in the case is less likely to be harmless. *Black II*, 364 Or at 596. However, even an error

that relates to a central factual issue may be harmless if the erroneously excluded evidence was cumulative of, rather than qualitatively different from, evidence the factfinder did consider. *Id.* The Supreme Court has acknowledged that "scientific evidence or evidence perceived by lay jurors to be scientific in nature possesses an unusually high degree of persuasive power." *Henley*, 363 Or at 307. Although the state has not developed a harmless-error argument, we have an independent obligation to consider whether defendant was prejudiced. *State v. Sperou*, 365 Or 121, 140, 442 P3d 581 (2019).

Defendant argues that the trial court's error was not harmless, because the excluded evidence would have helped the jury "assess the credibility and reliability of the answers of both SS and SDS." However, as addressed above, defendant's reply brief narrowed the issue on appeal to challenge the exclusion of evidence that there were "better questions to ask" a child who alleged multiple incidents of abuse than those asked in SDS's CARES interview. That offered testimony, which compared the questions "how old were you" the first time or last time the abuse occurred and "do you remember" the first time or last time the abuse occurred, is necessarily relevant only when a child has claimed abuse occurred multiple times over a lengthy period. Those questions would have had no relevance to the charges involving victim SS, who reported one single day of abuse two weeks after it occurred. Thus, we conclude the error was harmless and had little likelihood of affecting the verdict as to the convictions for defendant's crimes against SS, Counts 6 and 7.

However, we reach a different conclusion as to the convictions involving defendant's alleged conduct as to SDS. Johnson's excluded testimony was intended to critique CARES interview questions that asked SDS how old she was the first time and last time abuse occurred. SDS had responded to those questions by saying that some abuse had occurred when she was eight, nine, and 10 years old, and that it had stopped months previously. If permitted, Johnson would have given his opinion that asking a child of SDS's age whether she simply remembers the first or last time

abuse occurred, rather than connecting it to a specific age, is less likely to produce a "confused" response, because children are "more likely to be able to focus in terms of memory recall on a first time and a last time." Importantly, SDS had testified that she did not remember and could not describe the first time or last time defendant had abused her.

The excluded evidence went to the central factual issue of whether SDS was truthfully reporting abuse or whether the allegations were instead false. If, as Johnson sought to testify, children of SDS's age are generally able to remember the first time and last time abuse occurred, but less likely to be able to reliably say what age they were the first time and last time abuse occurred, SDS's responses could be seen as unreliable. Defendant's trial theory as to the charges involving SDS was that the mother had concocted the abuse story. Although the jury heard pieces of this theory through other evidence, Johnson's excluded testimony was unique in that it focused on the child's statements rather than on the mother. Thus, the erroneously excluded evidence was not merely cumulative of other admitted evidence but was qualitatively different from evidence the jury did hear. Considering the reality that scientific evidence like Johnson's offered expert testimony is often highly persuasive to juries, we cannot say that there is little likelihood this error affected the verdict on Counts 1 through 5.[7]

## III.   CONCLUSION

In sum, we conclude that the trial court erred in prohibiting defendant's expert from discussing "better questions to ask" during the CARES interview of SDS, and conclude that this error was not harmless as to Counts 1 through 5. However, we conclude that the court's error was harmless as to Counts 6 and 7, the remaining counts for which defendant was convicted of sexual abuse and attempted sexual abuse of the victim SS. Having either not reached or

---

[7] Because we conclude that the exclusion of the evidence was not harmless for the reasons expressed above, we do not address defendant's additional argument that the excluded evidence could have supported his arguments that he did not engage in any charged conduct after his fifteenth birthday, which was necessary to establish both adult court jurisdiction and the imposition of mandatory minimum sentences.

rejected defendant's other assignments of error, we reverse and remand to the trial court for a new trial on Counts 1, 2, 3, 4, and 5, and affirm and remand for resentencing on Counts 6 and 7, the remaining convictions.

Convictions on Counts 1, 2, 3, 4, and 5 reversed and remanded; remanded for resentencing; otherwise affirmed.